497 So.2d 1275 (1986)
Robert BOTTE, Appellant,
v.
Robert M. POMEROY, d/b/a South Seas Apartments, and St. Paul Mercury Insurance Company, Appellees.
Nos. 84-2438, 85-681.
District Court of Appeal of Florida, Fourth District.
November 12, 1986.
Rehearing Denied December 19, 1986.
*1276 Goldstein Professional Ass'n, and Elizabeth K. Clarke of Daniels and Hicks, P.A., Miami, for appellant.
Richard A. Sherman of Law Offices of Richard A. Sherman, Fort Lauderdale, for appellees.
ANSTEAD, Judge.
This is an appeal from a jury verdict in favor of the defendants in an action for personal injuries. In an earlier appeal, this court reversed a summary judgment entered for defendants. Botte v. Pomeroy, 438 So.2d 544 (Fla. 4th DCA 1983), rev. denied, 450 So.2d 488 (Fla. 1984). The case then proceeded to trial. Because we believe the trial court erred in a number of important evidentiary rulings, we reverse for a new trial.
Robert Botte was the plaintiff below. The defendants were Robert Pomeroy, owner of the South Seas Apartment complex, and Pomeroy's insurer. The action was predicated on the acts of Jack Edwards, an alleged employee of Pomeroy. On July 27, 1978, Botte, then eighteen years old, suffered an accident of unknown origin which fractured his neck. Edwards found Botte lying on the grounds outside the apartment complex. Apparently believing Botte to have overdosed on drugs, Edwards allegedly moved him about 15 feet to a lighted area near the building. Botte received emergency medical treatment, but it was subsequently determined that at some point after the accident he was rendered a quadriplegic. Botte's initial complaint sought damages against Pomeroy and a number of medical malpractice defendants. Botte's suit against Pomeroy alleged that the actions of Edwards in moving Botte over his objection aggravated his initial injury and caused his paralysis. Pomeroy answered denying Edwards' negligence or that Edwards was his agent or *1277 employee, or any causal connection between Edwards' action and Botte's injury, and raising the affirmative defenses of comparative negligence and immunity under the Florida Good Samaritan Act, Section 768.13, Florida Statutes (1981).
Initially, the defendants moved for and were granted a summary judgment on the grounds of immunity under the Good Samaritan Act, which immunizes certain voluntary acts of assistance to injured persons. This court reversed, noting that factual issues existed regarding whether the volunteered assistance was rendered "without objection" and in an "ordinary reasonably prudent fashion" as required by the statute. 438 So.2d at 545. The case was tried in September 1984, resulting in a jury verdict for the appellees finding immunity under the Good Samaritan statute. The contested evidentiary rulings will be discussed in sequence.
At trial Botte moved to call Jack Edwards as an adverse party in order to examine him with leading questions and to impeach his credibility with previous sworn testimony in three important areas: whether Edwards was an employee of Pomeroy, whether Edwards actually moved Botte, and whether Edwards knew that Botte was not to be moved because of his injuries. The trial court denied the motion, apparently on the ground that Edwards was not named as a party, but noted that Botte could call him to the stand and, if Edwards' testimony actually proved prejudicial, then treat him as an adverse witness for purposes of impeachment. When Edwards had completed his testimony, Botte again moved to have him declared an adverse witness on the basis that his testimony was prejudicial and contrary to his prior statements. The court again denied the motion.
Under Florida law a party need not be named in the pleadings to be called as an adverse party, so long as the party occupies an adverse position at trial to the calling party and could have been named as a party. Smith v. Fortune Insurance Co., 404 So.2d 821, 823 (Fla. 1st DCA 1981). Edwards meets the Smith criteria for adversity; each factor identified by that court as significant is present here. Under the Smith analysis, with which we concur, the trial court erred in not allowing Botte to call Edwards as an adverse party. In addition, under Florida's Evidence Code, once Edwards took the stand and gave his testimony, which both parties acknowledge was adverse, Botte was entitled to offer the prior inconsistent deposition testimony as impeachment. See § 90.608(2), Fla. Stat. (1983). Although Edwards' employee status was an issue at the trial, this factor also supports Botte's claim that Edwards could have been called as an adverse party. A non-party employee of a named party may be called as an adverse party witness. Medina v. Variety Children's Hospital, 438 So.2d 138 (Fla. 3d DCA 1983). In light of the factual conflicts between what Edwards said on the stand and in deposition, and the relevance of these conflicts to the critical issues at trial of agency and Edwards' actions and knowledge at the time he allegedly moved Botte, we believe that the trial court's erroneous rulings constituted reversible error.
For the same reason that Edwards could have been called as an adverse party, the court erred in excluding as hearsay the testimony of police officer Michael Gillo regarding statements Edwards had made to him in the course of the investigation. The record reflects that Gillo would have testified that Edwards told him he was "making rounds" of the apartment complex when he found Botte, that Botte indicated to him that he was hurt, and that he moved Botte and removed his pants. The defendants objected to the statements as hearsay. In view of the contested issues of employment and Edwards' actions, these statements should have been admitted under the admissions exception to the hearsay rule. In Smith v. Fortune Insurance Co., cited above, the court reached the conclusion that statements by a non-party declarant to a police officer may come in as admissions where the declarant meets the criteria of adversity. 404 So.2d at 823. In addition, the statements should come in as vicarious *1278 admissions under Section 90.803(18), Florida Statutes:
ADMISSIONS.  A statement that is offered against a party and is:

(a) His own statement in either an individual or a representative capacity;
(b) A statement of which he has manifested his adoption or belief in its truth;
(c) A statement by a person specifically authorized by him to make a statement concerning the subject;
(d) A statement by his agent or servant concerning a matter within the scope of the agency or employment thereof, made during the existence of the relationship.

(Emphasis added.) See also Poitier v. School Board of Broward County, 475 So.2d 1274 (Fla. 4th DCA 1985). Since retrial is necessary, we do not consider whether the appellant may have waived his right to appeal the court's ruling on Gillo's statements by failing to assert the correct basis for admissibility at trial.
Botte also claims error in the trial court's admission of evidence of Botte's transient lifestyle and history of drug abuse. Prior to the trial, counsel for Botte had filed an unsuccessful motion in limine to exclude reference to prior drug consumption. Botte was cross-examined extensively about his experience prior to the day of the accident with selling and using psilocybin mushrooms. Botte's use of drugs was highlighted in the opening and closing statements of the defense. In the same vein, the defendants put before the jury evidence relating to Botte's misspent youth, including statements Botte allegedly made to a doctor that he had committed 23 burglaries in North Carolina as a juvenile. On the previous day, the court had ruled that evidence of Botte's lifestyle after he left school in 10th grade would be admissible. However, the record shows that the alleged burglaries occurred when Botte was 14, prior to his quitting school. The basis for the court's ruling is unclear, but apparently the court found the evidence relevant to Botte's future earning capacity, insofar as it rebutted the testimony of his own expert witness on future earnings.
The appellees argue that the evidence of Botte's juvenile criminal record and history of selling and using drugs was relevant to the issue of damages. Specifically, the evidence is claimed to rebut the testimony of plaintiff's economist on Botte's future earning capacity as a construction worker, and to show that Botte led a "criminal lifestyle" and had an income that consisted largely of burglaries and selling drugs. The appellees also argue that evidence of past drug use by Botte was admissible to corroborate other evidence on the material issue of his drug use at the time of the accident, citing State v. Wadsworth, 210 So.2d 4 (Fla. 1968).
As to the evidence of prior crimes, we note that section 90.610 of the evidence code specifically forbids the use of such evidence for impeachment of credibility. Also, section 90.404 states a general prohibition against using evidence of past crimes solely to prove bad character or propensity. Although section 90.608(1)(e) does provide for the impeachment of a witness with proof that material facts are not as testified to by the witness, neither Botte nor his economist testified regarding any past conduct or juvenile crimes. In light of these explicit provisions, we believe that the evidence of prior juvenile crimes was not rendered admissible by its very limited relevance, and should have been excluded by the trial court.
The evidence of drug use presents a more difficult question. Ordinarily, we would disapprove the use of evidence of a party's prior experience with drugs as a teenager on the issue of future earnings or his use of drugs at the time of his injury.[1] However, in this case the appellant was injured while still a teenager and by that time had not carried on any useful employment *1279 or other activity which would demonstrate a break with his past. We believe the jury was entitled to have some information on the appellant's track record, limited as it was. Under these particular circumstances, the court on retrial may permit the defendants to rebut evidence of Botte's future earning capacity with carefully circumscribed questions relating to his means of support prior to the accident. Further, since Botte's alleged drug overdose on the day of the accident was material to the issue of contributory negligence, the defendants may also adduce evidence of Botte's drug consumption as it relates to his physical state on that day. Such evidence, to be admissible, should be demonstrated to relate to the relevant issues and not be used solely to create prejudice in the minds of the jurors. See § 90.403, Fla. Stat. (1983).
We also believe that the court erred in excluding certain expert medical testimony offered by the appellant. Appellant attempted to call Dr. Floyd Bralliar to give expert testimony on the causation of Botte's spinal cord injury. It is undisputed that the witness had the professional qualifications to qualify him as an expert and also had experience treating spinal cord injuries similar to the one suffered by Botte, albeit from the perspective of rehabilitative medicine rather than neurology. The record shows that the doctor's experience in spinal medicine consisted of his exposure to numerous patients with spinal cord injuries at Craig Hospital in Colorado (from 1974-1976), and supervision of spinal cord injury clinics while on the faculties of the University of California at Davis (from 1977-1978), and Loma Linda University (from 1978-1980). The doctor testified that he had been recognized by a national board of experts in the area of physical medicine and rehabilitation. After thorough voir dire, covering his particular areas of specialization and his exposure to the area of spinal cord medicine, the court declined to permit Dr. Bralliar to offer opinions as an expert in spinal cord injuries. The doctor's proffered opinion, which was excluded, was to the effect that Edwards' movement of Botte aggravated Botte's neck injury and created a state of quadriplegia.
While recognizing that the responsibility of determining the qualifications and range of subjects on which an expert may testify generally lies within the discretion of the trial court, see Guy v. Kight, 431 So.2d 653, 656 (Fla. 5th DCA 1983), rev. denied, 440 So.2d 352 (Fla. 1983), we believe that the plaintiff in a lawsuit for personal injuries may not be deprived of the right to present expert medical testimony of a licensed and experienced physician without substantial reason to believe that the expert is unqualified to render an opinion that will be reliable and helpful to the trier-of-fact. See § 90.702, Fla. Stat. (1983). Under these circumstances, we believe the trial court erred in excluding the critical testimony. In our view, any objections to Dr. Bralliar's qualifications based on his failure to specialize in the diagnosis of spinal cord injuries should have been addressed to the weight of his testimony and not its admissibility. Ferraro v. Federal Insurance Co., 479 So.2d 159 (Fla. 4th DCA 1985). The error was harmful, because the doctor's proffered testimony supplied an essential link in the alleged chain of causation between the actions of Edwards and Botte's injury.
Botte next claims error in both the admission and the exclusion of testimony of Edwards' roommate Rick Burley, who was with Edwards when he went to help Botte. Burley's testimony was presented by deposition due to his imprisonment in another state. The appellant attempted to present a portion of the deposition in which Burley was asked, "Did [Edwards] tell you not to tell [the police] they moved Bob Botte?" A timely objection was made to the question at deposition. At trial, the defendants objected to the question as leading, and the trial court sustained the objection. The appellant contends that this question was not leading, and cites Porter v. State, 386 So.2d 1209 (Fla. 3d DCA 1980). Contrary to the apparent holding in Porter, we agree with the trial court's ruling *1280 here. In another contested ruling on Burley's testimony, the court permitted the defense to read for the jury deposition questions specifically setting out Burley's prior criminal history, including the specific nature of the crimes whether felonies or misdemeanors. Section 90.610(1), Florida Statutes (1983), provides:
A party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year under the law under which he was convicted, or if the crime involved dishonesty or a false statement regardless of the punishment... .
Under this provision, questioning is limited to whether the witness has ever been convicted of a felony or a crime involving dishonesty. Parks v. Zitnik, 453 So.2d 434, 436 (Fla. 2d DCA 1984); Cummings v. State, 412 So.2d 436, 437-38 (Fla. 4th DCA 1982). The witness may be required to give the number of convictions, but if he answers truthfully, no further questions may be asked. In particular, the nature of the crimes may not be elicited. Parks, 453 So.2d at 436-37; Cummings, 412 So.2d at 438. The line of questioning of Burley was thus improper and should have been excluded.
We also agree that it was error for an expert witness, Dr. John Getz, to be permitted over objection to give an opinion as to whether Edwards' actions in moving Botte were reasonable for a layman. The defendants reiterated this testimony during closing argument. Expert testimony should usually be received only where the disputed issue for which the evidence is offered is beyond the ordinary understanding of the jury. Kruse v. State, 483 So.2d 1383, 1385 (Fla. 4th DCA 1986). Testimony such as that elicited from Dr. Getz tends to invade the province of the jury. Were this the only issue on appeal, we might be inclined to find the error harmless. However, we express our disapproval of this form of questioning in order that it can be avoided on retrial should the issue arise again.
During closing arguments, the appellant moved for a mistrial based on certain arguments made by the appellees in support of the Good Samaritan defense. The culmination of these arguments was a statement citing a case in Massachusetts where a woman was raped on a pool table by the patrons in a bar. The motion for mistrial was denied. We agree with the appellees that they had the right to argue the statutory Good Samaritan defense and to argue the purposes of the statute to the jury. A certain amount of rhetoric has traditionally been permitted in closing arguments. We nevertheless feel that the use of rhetoric may have gone too far here, and would hope that any reference to the pool table rape case or similar incidents will not be repeated.
The final error complained of involves the verdict form submitted to the jury by the court. The trial court instructed the jury that they were to determine first, whether Edwards was an agent or employee of Pomeroy; second, if so, whether Edwards was negligent; and third, if the answer to the previous questions was yes, the applicability of the Good Samaritan defense. However, the court approved, and the jury was given, a special interrogatory verdict form which made the Good Samaritan defense the first issue for the jury's consideration. The appellant contends that the order of issues in the verdict form could have confused or misled the jurors and inappropriately highlighted the Good Samaritan defense at the expense of the ordinary negligence issues. While the content of the verdict form is normally within the trial court's discretion, we agree that ordinarily the verdict form should parallel the court's instruction on the law and not give undue prominence to any single issue in the case.
We are in sympathy with those who would like to see this protracted litigation come to an end. The trial of this action was lengthy and at times heated. Nevertheless, we believe that the series of erroneous evidentiary rulings discussed above *1281 constituted substantial prejudicial error and require a new trial. Accordingly, we reverse and remand for a new trial.
LETTS and DELL, JJ., concur.
NOTES
[1] We do not believe the decision in State v. Wadsworth, 210 So.2d 4 (Fla. 1968), involving a chronic alcoholic charged with manslaughter by intoxication, stands for the proposition that prior drug or alcohol use may routinely be used to prove its use on a subsequent occasion.