568 So.2d 24 (1990)
DEPARTMENT OF AGRICULTURE AND CONSUMER SERVICES, Petitioner,
v.
Robert H. BONANNO, Judge, etc., Respondent.
No. 74373.
Supreme Court of Florida.
September 27, 1990.
*26 Robert A. Butterworth, Atty. Gen., David G. Guest, Desmond V. Tobias and Ronald G. Stowers, Asst. Attys. Gen., Tallahassee, and Parker D. Thomson of Thomson, Muraro, Bohrer and Razook, P.A., Miami, Special Asst. Atty. Gen., for petitioner.
James S. Moody, Jr. and Johnnie B. Byrd, Jr. of Trinkle, Redman, Moody & Swanson, P.A., Plant City, and Elizabeth S. Wheeler, Brandon, for respondent.
David C.G. Kerr and Susan W. Fox of Macfarlane, Ferguson, Allison & Kelly, Tampa, amicus curiae for Lykes Bros., Inc.
Paul H. Amundsen and Ernest L. Reddick, III of F. Philip Blank, P.A., Tallahassee, amicus curiae for Indian River Citrus League.
M. Stephen Turner and David K. Miller of Broad & Cassel, Tallahassee, amicus curiae for May Bros., Inc.
Ellen Neil Kalmbacher, Gerald Spurgin and Robert J. Kline of Holland and Knight, Tampa, and Julian Clarkson of Holland and Knight, Tallahassee, amicus curiae for A. Duda & Sons, Inc.
Harry O. Thomas and Susan Davis-Morley of Aurell, Radey, Hinkle & Thomas, Tallahassee, and Robert E. Doyle, Jr. of Asbell, Hains, Doyle & Pickworth, Naples, amicus curiae for Glenn Simpson.
Kerry M. Wilson and J. Davis Connor of Peterson, Myers, Craig, Crews, Brandon & Mann, P.A., Winter Haven, amici curiae for Gary M. Mahon and Chrystal D. Mahon, and Chrystal D. Mahon, d/b/a Pokey's Citrus Nursery; Douglas A. Holmberg, d/b/a Hillsborough Wholesale Nursery; Fred J. Snell; Charles W. Dewitt; Environmental Citrus Nursery, Inc.; Forrest Nursery, Inc.; Floyd Philmon; David S. Prosser, Jr.; Southern Citrus Nursery, Inc.; W.A. Williams Nursery Service, Inc.; Bruce Wilson, d/b/a Bruce Wilson Nursery; and Peter F.A. Hutchinson, d/b/a Hutchinson Citrus Nursery.
Robert L. Shevin of Stroock & Stroock & Lavan, Miami, and D. Stephen Kahn and Thomas R. McSwain, Tallahassee, amicus curiae for Bob Crawford, President of the Florida Senate.
Richard A. Hixson and Sonia R. Crockett, Tallahassee, amicus curiae for Tom Gustafson, Speaker of the Florida House of Representatives.
Anthony J. Abate and Donald D. Clark of Abel, Bank, Brown, Russell & Collier, Chartered, Sarasota, amicus curiae.
PER CURIAM.
The Department of Agriculture and Consumer Services (Department) seeks a writ of prohibition from this Court, restraining Circuit Judge Robert H. Bonanno from exercising the jurisdiction of the Thirteenth Judicial Circuit Court over the consolidated cases of Sweat v. Department of Agriculture & Consumer Services, No. 88-16980; Janvrin v. Department of Agriculture & Consumer Services, No. 88-16979; and Balm Citrus Nursery, Inc. v. Department of Agriculture & Consumer Services, No. 88-17170. We have jurisdiction. Art. V, § 3(b)(7), Fla. Const.
In 1984, a form of citrus canker was discovered in central Florida. The Secretary of the United States Department of Agriculture (USDA) declared an extraordinary emergency in the State of Florida because of the citrus canker. Fearing that the disease would devastate the citrus industry, the Department of Agriculture and Consumer Services, with the cooperation of the USDA, embarked upon a Citrus Canker Eradication Program (the Canker Program) under which many diseased plants, as well as healthy plants which had been exposed to the disease, were destroyed. In Department of Agriculture & Consumer Services v. Mid-Florida Growers, Inc., 521 So.2d 101 (Fla.), cert. denied, 488 U.S. 870, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988), this *27 Court held that the state was required to compensate the owners of healthy but suspect citrus plants destroyed under the Canker Program.
The underlying actions in the circuit court are suits in inverse condemnation in which the plaintiffs seek compensation from the State of Florida for citrus plants destroyed pursuant to the Canker Program. The Department filed a motion to dismiss arguing that chapter 89-91, Laws of Florida (the Act), deprived the circuit courts of jurisdiction over this type of case. Judge Bonanno denied the motion to dismiss and ruled that the Act is unconstitutional because it "takes away rights presently vested in the Plaintiffs and imposes new burdens upon the Plaintiffs ... to prove `just compensation' and to overcome a presumptive value in doing so."
Chapter 89-91 sets forth a mechanism for payment of compensation for citrus plants destroyed pursuant to the Canker Program. For those claimants who choose not to accept the compensation offered, the Act provides that "the sole and exclusive remedy" is through the administrative hearings process with appellate review by the First District Court of Appeal. The Act imposes a value schedule for destroyed citrus plants which is presumed to represent full and fair compensation unless rebutted by the claimant. The Act provides for the payment of attorneys' fees for the prosecution of claims before the hearing officer as well as for services rendered in connection with prior lawsuits. The Act took effect on June 30, 1989, but specifically provides that it is to apply
to all claimants, including, but not limited to, those who have filed lawsuits prior to the effective date of this act involving compensation for destruction of citrus nursery plants as a result of the Citrus Canker Eradication Program begun in 1984, except those in which there is a final order as to damages, attorney's fees, or costs, from which no appeal has been taken.
Ch. 89-91, § 2(2)(a), Laws of Fla. Because the Act purports to remove jurisdiction from Judge Bonanno's court, prohibition is the proper remedy. State ex rel. Girard v. McNulty, 348 So.2d 311 (Fla. 1977).
Preliminarily, we disagree with Judge Bonanno that the Act "applies only to citrus nursery plants and not to trees pulled from groves" and therefore is inapplicable to plaintiffs Sweat and Janvrin who are grove owners.[1] Although the Act does use the term "citrus nursery plant," that term is not defined in the Act. However, the statement of legislative intent in section 2(2)(a) of the Act states that the Act is intended to apply to "all claimants, including, but not limited to, those who have filed lawsuits prior to the effective date of this act involving compensation for destruction of citrus nursery plants." (Emphasis added.) Further, in the schedule of presumptive values included in the Act, there is a value listed for "resets," i.e., citrus plants that have been replanted into a grove, as well as for potted nursery plants. Ch. 89-91, § 3(1), Laws of Fla. It is evident from review of the Act as a whole that the legislature intended the Act to apply to all claimants whose citrus property was destroyed pursuant to the Canker Program.
The administration of the Canker Program and the subsequent judicial and legislative response are remarkably similar to that which occurred as a result of efforts to eradicate the citrus disease known as spreading decline caused by the burrowing nematode. In Corneal v. State Plant Board, 95 So.2d 1 (Fla. 1957), this Court held that the State Plant Board could not destroy healthy trees thought ultimately to be subject to the disease without paying compensation to the owners. Thereafter, the legislature enacted a statute providing for the destruction of uninfested trees upon the payment of "just and fair compensation" as determined by the State Plant Board. Subject to certain exceptions, the constitutionality of the statute was upheld in State Plant Board v. Smith, 110 So.2d 401 (Fla. 1959). Subsequently, the statute was held to represent a constitutional exercise *28 of power which was binding upon parties whose trees had been destroyed prior to the enactment of the statute. Cunningham v. State Plant Board, 112 So.2d 905 (Fla. 2d DCA), cert. denied, 115 So.2d 701 (Fla. 1959). The relevance of these decisions will become more apparent as the several constitutional attacks upon chapter 89-91 are discussed.
The plaintiffs argue that chapter 89-91 unconstitutionally deprives them of a jury trial. Article I, section 22, of the Florida Constitution, provides in pertinent part that "[t]he right of trial by jury shall be secure to all and remain inviolate." This Court in In re Forfeiture of 1978 Chevrolet Van, 493 So.2d 433, 435 (Fla. 1986), determined that the proper inquiry to be made under this state constitutional provision was "whether under English and American practice at the time Florida's first constitution became effective in 1845, there existed a right to a jury trial" in a given type of proceeding. No right to a jury trial in condemnation proceedings existed at common law. Carter v. State Rd. Dep't, 189 So.2d 793, 795 (Fla. 1966). Therefore, the right to have a jury determine just compensation in Florida is statutory, section 73.071, Florida Statutes (1987), and is not required by the Florida Constitution.
The plaintiffs also contend that chapter 89-91 violates the requirement of separation of powers as set forth in article II, section 3, and article V, section 1, of the Florida Constitution. Thus, the plaintiffs argue that the determination of what constitutes just or full compensation for property taken by the government is a judicial function which may not be constitutionally performed by either the legislative or executive branches. They contend that by mandating that the Division of Administrative Hearings determine just compensation for citrus canker cases the legislature has essentially constituted the agency as a court for that purpose.
Notwithstanding the plaintiffs' arguments, chapter 89-91 is much like the spreading decline statute that was approved in Smith, in which the State Plant Board made the determination of just and fair compensation, subject to judicial review. The plaintiffs seek to distinguish Smith by pointing out that at that time article V, section 1, of the Florida Constitution of 1885 authorized the legislature to establish new courts. Article V, section 1 of the current constitution precludes the establishment of any court other than the supreme court, district courts of appeal, circuit courts, and county courts, although it does provide that "[c]ommissions established by law, or administrative offices or bodies may be granted quasi-judicial power in matters connected with the functions of their offices."
We do not believe that the legislature created a court when it provided that the initial determination of compensation should be made by an administrative hearing officer. In Scholastic Systems, Inc. v. LeLoup, 307 So.2d 166 (Fla. 1974), this Court explained that nonjudges could be authorized to perform some judicial functions under certain circumstances without becoming a court as defined under the present version of article V, section 1. In that case, the Court was faced with the question of whether parties had an absolute right of review in the supreme court from orders of the Industrial Relations Commission. The answer to this question turned on whether the appeal which was authorized from orders of judges of Industrial Claims to the Industrial Relations Commission constituted appellate judicial review under the constitution. The Court held that the Industrial Relations Commission was exercising a judicial function sufficient to meet the constitutional requirements of appellate judicial review. However, the Court said:
In recognizing the IRC as a judicial tribunal performing the functions of a court for purposes of the "due process" provision of the constitution, we do not intend to imply that the IRC is literally a "court," for Art. V, § 1, Fla. Const., expressly prohibits the creation of any courts not expressly listed therein. We are merely recognizing that decisions of the IRC, in its capacity as a body reviewing *29 determinations of Judges of Industrial Claims, are of such judicial nature as to satisfy this constitutional provision... .
Id. at 170. Similarly, in canker cases, while the hearing officer will be performing a judicial function in determining compensation, he or she will not be acting as a court within the meaning of article V, section 1.[2]
1A Nichols' The Law of Eminent Domain § 4.104, at 4-129 to 4-130 (rev. 3d ed. Aug. 1985), points out:
In those states in which a jury is not required by the constitution in eminent domain proceedings, the owner is entitled to a hearing conducted in some fair and just manner before an impartial and competent tribunal, and a chance to submit before such tribunal, evidence of the value of his property and the extent to which it has been damaged. The amount of compensation is a judicial question and cannot be decided by the legislature, but the nature and character of the tribunal is in the discretion of the legislature, and it may consist of a justice of the court sitting alone, or of any number of commissioners.
(Footnotes omitted.)
Under the United States Constitution, the estimate of just compensation for property taken under the right of eminent domain is not required to be made by a court "but may be entrusted by Congress to commissioners appointed by a court or by the executive, or to an inquest consisting of more or fewer men than an ordinary jury." Bauman v. Ross, 167 U.S. 548, 593, 17 S.Ct. 966, 983, 42 L.Ed. 270 (1897). In United States v. Jones, 109 U.S. 513, 518-19, 3 S.Ct. 346, 349-51, 27 L.Ed. 1015 (1883), the United States Supreme Court said:
There is, in this position, an assumption that the ascertainment of the amount of compensation to be made is an essential element of the power of appropriation; but such is not the case. The power to take private property for public uses, generally termed the right of eminent domain, belongs to every independent government. It is an incident of sovereignty and, as said in Boom Co. v. Patterson, 98 U.S. 403 406 [25 L.Ed. 206] [(1878)], requires no constitutional recognition. The provision found in the Fifth Amendment to the federal Constitution, and in the Constitutions of the several States, for just compensation for the property taken, is merely a limitation upon the use of the power. It is no part of the power itself, but a condition upon which the power may be exercised... . [T]here is no reason why the compensation to be made may not be ascertained by any appropriate tribunal capable of estimating the value of the property... .
The proceeding for the ascertainment of the value of the property and consequent compensation to be made ... may be prosecuted before commissioners or special boards or the courts, with or without the intervention of a jury, as the legislative power may designate. All that is required is that it shall be conducted in some fair and just manner, with opportunity to the owners of the property to present evidence as to its value, and to be heard thereon.
Thus, it is not unusual for commissions to be utilized as devices to determine just compensation with the right of review for the final determination to a court of competent jurisdiction. See, e.g., United States v. 5.00 Acres of Land, 673 F.2d 1244 (11th Cir.1982) (Big Cypress Land Commission appointed to determine just compensation in attendant eminent domain proceedings).
The procedures set forth in chapter 89-91 are virtually the same as those followed under the Workers' Compensation Law. The exclusive remedy for compensation for citrus plants destroyed under the Canker Program is through the administrative hearing process. The Workers' Compensation Law is the exclusive remedy for all on-the-job injuries, and the initial determination of the entitlement to compensation *30 and the extent thereof is determined by a nonjudge. Under both chapter 89-91 and the Workers' Compensation Law, the non-judge's ruling is subject to judicial review in the district court of appeal.[3]
The plaintiffs also argue that the retroactive application of chapter 89-91 makes the act unconstitutional because it takes away their vested rights. The same argument was made in Cunningham with respect to the spreading decline statute. Relying upon the supreme court's ruling in Smith, the court held that the statute applied to the destruction which occurred prior to its enactment because its provisions were procedural and remedial and did not take away vested rights. This Court later cited Cunningham for the following proposition:
Remedial statutes or statutes relating to remedies or modes of procedure, which do not create new or take away vested rights, but only operate in furtherance of the remedy or confirmation of rights already existing, do not come within the legal conception of a retrospective law, or the general rule against retrospective operation of statutes.
City of Lakeland v. Catinella, 129 So.2d 133, 136 (Fla. 1961). Chapter 89-91 appears remedial in nature because it confirms the right to compensation and merely provides the procedure by which the amount of compensation is to be determined.
Furthermore, whether or not the plaintiffs' rights are vested in this case is essentially irrelevant because that alone is not dispositive.
Under due process considerations, a retroactive abrogation of value has generally been deemed impermissible. The rule is not absolute, however, and courts have used a weighing process to balance the considerations permitting or prohibiting an abrogation of value. Despite formulations hinging on categories such as "vested rights" or "remedies," it has been suggested that the weighing process by which courts in fact decide whether to sustain the retroactive application of a statute involves three considerations: the strength of the public interest served by the statute, the extent to which the right affected is abrogated, and the nature of the right affected.
Department of Transp. v. Knowles, 402 So.2d 1155, 1158 (Fla. 1981) (citations and footnote omitted). Applying this balancing test, we find that the Act serves a public interest in streamlining the process for settlement of compensation claims for destruction of citrus plants under the Canker Program. Further, unlike the situation in Knowles, where Knowles' right to full tort recovery was completely abrogated by legislative enactment granting public employees absolute immunity from suit, chapter 89-91 merely provides a different procedure to obtain recovery. Therefore, we find that the retroactive application of chapter 89-91 does not violate due process.
We also conclude that chapter 89-91 does not deprive the plaintiffs of access to the courts as guaranteed by article I, section 21, of the Florida Constitution. As noted above, chapter 89-91 provides access to the courts by way of appeal to the First District Court of Appeal. However, to the extent that the statute could be said to place a limitation upon access, there is no violation of article I, section 21. In Kluger v. White, 281 So.2d 1 (Fla. 1973), this Court held that the legislature may abolish a common law right of access to the courts if it provides a reasonable alternative to protect the rights of the people to redress for injuries. Chapter 89-91 provides a reasonable alternative. Additionally, the statute actually confers some benefits which would not be available in circuit court. It permits the payment of claims which would be barred by the statute of limitations. Moreover, claimants have no obligation to invalidate the releases they signed in order to receive partial compensation which was earlier authorized by the legislature. Further, as we construe the statute, it puts a floor on the value of destroyed plants. *31 Even though evidence of the public's reluctance to purchase plants grown in an infested nursery is admissible for purposes of determining value, Department of Agriculture & Consumer Services v. Polk, 568 So.2d 35 (Fla. 1990), the state cannot limit its obligation to pay for destroyed plants to less than the values established by the legislature.[4]
The plaintiffs also challenge the Act's schedules of presumptive values for different citrus stock, chapter 89-91, section 3, Laws of Florida, arguing that these schedules remove the determination of what constitutes just or full compensation by setting out the legislature's own determination of the proper compensation to be awarded. It is true that the legislature may not set conclusive values for property taken for a public purpose because the determination of just compensation is a judicial function. Smith, 110 So.2d at 407. However, section 6(12) provides that these values "shall be presumed to provide full and fair compensation but may be rebutted." (Emphasis added.) Therefore, the presumptive values set forth in chapter 89-91 are not conclusive, but are rebuttable presumptions. The owner may come forth with evidence showing that in that particular case, those presumptive values would not provide just compensation. The state may then offer further evidence to support its position. We do not find that these schedules impermissibly interfere with the power of the judiciary to determine just compensation.
Nor do we agree that these presumptions unconstitutionally relieve the state of its burden of proof on the value of the destroyed citrus stock. Section 90.302, Florida Statutes (1987), sets forth the two types of rebuttable presumptions recognized in Florida:
Every rebuttable presumption is either:
(1) A presumption affecting the burden of producing evidence and requiring the trier of fact to assume the existence of the presumed fact, unless credible evidence sufficient to sustain a finding of the nonexistence of the presumed fact is introduced, in which event, the existence or nonexistence of the presumed fact shall be determined from the evidence without regard to the presumption; or
(2) A presumption affecting the burden of proof that imposes upon the party against whom it operates the burden of proof concerning the nonexistence of the presumed fact.
Section 90.303, Florida Statutes (1987), defines the former type of rebuttable presumption:
In a civil action or proceeding, unless otherwise provided by statute, a presumption established primarily to facilitate the determination of the particular action in which the presumption is applied, rather than to implement public policy, is a presumption affecting the burden of producing evidence.
This type of presumption is commonly referred to as a vanishing presumption, or a "bursting bubble" presumption. Once evidence rebutting the presumption is introduced, the presumption disappears and the jury is not told of it. Section 90.304, Florida Statutes (1987), defines the second type of rebuttable presumption:
In civil actions, all rebuttable presumptions which are not defined in s. 90.303 are presumptions affecting the burden of proof.
When a presumption shifts the burden of proof, the presumption remains in effect even after evidence rebutting the presumption has been introduced and the jury must decide if the evidence is sufficient to overcome the presumption. Public Health Trust v. Valcin, 507 So.2d 596 (Fla. 1987). Presumptions which shift the burden of proof in civil proceedings are primarily expressions *32 of social policy. Id. at 601; Caldwell v. Division of Retirement, 372 So.2d 438, 440 (Fla. 1979); C. Ehrhardt, Florida Evidence 68-79 (2d ed. 1984) (e.g., presumptions of the validity of marriage, sanity in civil cases, legitimacy of a child born in wedlock, the correctness of judgments). The presumptions set forth in chapter 89-91 do not promote any overall social policy. We find that these presumptive value schedules fit the definition in section 90.303 of presumptions affecting the burden of production, which does not relieve the state of the burden of proof on value when the citrus owner introduces credible evidence of value.[5]
This does not mean that the values as established by the legislature may not be considered as evidence along with any other evidence of value which may be introduced. This was explained in Department of Pollution Control v. International Paper Co., 329 So.2d 5 (Fla. 1976), which involved the constitutionality of a statute which authorized the Department of Pollution Control to conclusively establish the values of different species of fish. Observing that "[w]here scientific or technical information is difficult or expensive to obtain, statutes prescribing a competent means to establish such a fact are permissible," we upheld the statute except that we stated that the department could not conclusively prescribe a specific amount of damages. Id. at 8. We stated:
We hold the fish table values as authorized by the statute in issue are proper and relevant to the question of damages. They are admissible and may be introduced as evidence and rebutted like any other evidence. The introduction into evidence of such table requires the trier of fact to accept the specified fish values as a presumed fact unless credible evidence to the contrary is introduced, in which case the fish values shall be determined from all the evidence without regard to any presumption. The trier of fact will make the final determination of the amount of damages based upon the weight and credibility of all the evidence in the cause.
Id.
We have also considered the other arguments of the plaintiffs and the amici curiae and find them to be without merit.
Thus, we conclude that the respondent no longer has jurisdiction over the underlying actions. We grant the petition and issue the writ of prohibition to prevent further proceedings in case numbers 88-16980, 88-16979, and 88-17170.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD and GRIMES, JJ., concur.
EHRLICH, J., concurs in part and dissents in part with an opinion, in which BARKETT and KOGAN, JJ., concur.
EHRLICH, Judge, concurring in part and dissenting in part.
I cannot concur in the majority's holding that the Act does not violate the state constitutional requirement of separation of powers as set forth in article II, section 3, and article V, section 1, of the Florida Constitution, but join in the remainder of the Court's opinion.
Article II, section 3 provides:
The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.

(Emphasis added.) This is a strong constitutional statement of the doctrine of separation of powers unmatched in the United States Constitution. The federal Constitution contains no express separation of powers provision. Indeed, as this Court recognized in Scholastic Systems, Inc. v. LeLoup, 307 So.2d 166, 169 (Fla. 1974), "[t]he federal court system has both `Article I courts' and `Article III courts,' an example of the former being the tax court. [Under *33 the federal Constitution,] [a] body may be a `court' without being named within the constitutional article dealing with the judiciary... ." In contrast, article V, section 1 of the Florida Constitution provides in pertinent part:
The judicial power shall be vested in a supreme court, district courts of appeal, circuit courts and county courts. No other courts may be established by the state, any political subdivision or any municipality... . Commissions established by law, or administrative officers or bodies may be granted quasi-judicial power in matters connected with the functions of their offices.
(Emphasis added.)[6] Therefore, "although the legislature has the power to create administrative agencies with quasi-judicial powers, the legislature cannot authorize these agencies to exercise powers that are fundamentally judicial in nature." Broward County v. La Rosa, 505 So.2d 422, 423 (Fla. 1987).
It is clear that the determination of what constitutes just compensation for property taken by the government is a judicial function which may not constitutionally be performed by either the legislative or executive branches. By removing this determination from the courts and placing it with the Division of Administrative Hearings the Act assigns an inherently judicial function to the executive branch in violation of article II, section 3 and constitutes that agency as a court in violation of article V, section 1.
The constitutions of the United States and Florida expressly guarantee that just or full compensation be paid to those whose property is taken by the government for public use.[7] Therefore, the question of what constitutes just or full compensation in a given case is one of constitutional dimension. I see no relevant distinction between the determination of what constitutes "just compensation" as required by the constitution, and the determination, for example, of what constitutes "due process," a right also expressly guaranteed by the federal and state constitutions. It can hardly be seriously contended that a determination of whether due process has been accorded a litigant may be made by an administrative hearing officer, a "nonjudge," to use the majority's terminology.
In concluding that the hearing officer will not be acting as a court within the meaning of article V, section 1, the majority finds it significant that "this Court has already determined that a `taking' has occurred." Op. at 29, n. 2. The determination of what constitutes just compensation is equally as judicial in nature as the determination of whether a taking of private property for public use has occurred. Both involve interpretation of constitutional language to determine what is required by the constitution before private property may be taken for a public purpose in a given case. Under the majority's analysis, the legislature could just as easily place the determination of whether a taking has occurred with an administrative hearing officer, a suggestion that is constitutionally frightening.
I can conceive of no more clearly judicial function than interpretation of the constitution.
The Constitution vests "the judicial power of the State" in designated courts, each having jurisdiction of defined classes of cases... . This power is the means provided by the Constitution for authoritatively determining in litigated cases the meaning and intent of pertinent *34 provisions of the Constitution itself[,] as well as whether other State laws and regulations accord with the Constitution, and whether executive or administrative action taken under a statute affecting the litigated rights, accords with the Constitution and with the intent of the statute, so that the court may give appropriate effect to the applicable governing law in adjudicating rights.
Getzen v. Sumter County, 89 Fla. 45, 49, 103 So. 104, 106 (1925). Cf. Adams v. Housing Authority, 60 So.2d 663, 669 (Fla. 1952) ("The question of whether constitutional provisions against the taking of private property for private use have been violated is, like all constitutional questions, ultimately for the Courts."). Indeed, as this Court so eloquently stated in Daniels v. State Road Department, 170 So.2d 846, 851 (Fla. 1964):
It is well settled that the determination of what is just compensation for the taking of private property for public use "is a judicial function that cannot be performed by the Legislature either directly or by any method of indirection."
(Quoting Spafford v. Brevard County, 92 Fla. 617, 627, 110 So. 451, 455 (1926)). See also State Plant Bd. v. Smith, 110 So.2d 401 (Fla. 1959); Hillsborough County v. Kensett, 107 Fla. 237, 144 So. 393 (1932).
One of the hallmarks of a judicial officer is the authority to pass on the constitutionality of matters in issue before him. It has been recognized that a deputy commissioner of workers' compensation claims cannot constitutionally serve as such a judicial officer. Sasso v. Ram Property Management, 431 So.2d 204 (Fla.App. 1 Dist. 1983). As noted in Sasso:
Deputy Commissioners do not have the power to render a determination as to the constitutionality of a portion of the Workers' Compensation Act, because a hearing before a deputy commissioner is part of an administrative remedy. Cf. Rollins v. Southern Bell Telephone & Telegraph Co., 384 So.2d 650, 652-653 (Fla. 1980). "[D]eputy commissioners function only as adjudicative officers in a traditional sense... ." Ortega v. Owens-Corning Fiberglass Corp., 409 So.2d 530, 532 (Fla. 1st DCA 1982). As the Florida Supreme Court recognized quite recently, a deputy is vested only with certain limited quasi-judicial powers. Smith v. Piezo Technology, 427 So.2d 182 (Fla. 1983). As administrative officers, deputy commissioners lack jurisdiction to consider claims of the facial unconstitutionality of any section of the Workers' Compensation Act.
Sasso, 431 So.2d at 207. Likewise a hearing officer of the executive branch is totally without power or authority to pass on the constitutionality of the matters to be presented to him in the course of proceedings provided by chapter 89-91, Laws of Florida. He is clearly no judicial officer. This seemingly is conceded by the majority when it refers to the hearing officer as a "nonjudge."
I am wholly unpersuaded by the majority's analogy to workers' compensation. Respectfully, it is specious reasoning, at best. The compensation awarded pursuant to chapter 440, Florida Statutes, the Workers' Compensation Law, is not constitutionally mandated, as is the determination and awarding of just compensation. Further, this Court has long recognized that the proceedings to determine recovery under the workers' compensation statutes conducted by Judges of Industrial Claims are quasi-judicial, not judicial, in nature. See Scholastic Systems, 307 So.2d at 171.
The majority states that this Court, in Scholastic Systems, "explained that nonjudges could be authorized to perform some judicial functions." Op. at 28. Such an interpretation of Scholastic Systems is contrary to article V, section 1 of the Florida Constitution, which expressly provides that "administrative officers or bodies may be granted quasi-judicial powers in matters connected with the functions of their offices" (emphasis added). When looking to Scholastic Systems for guidance in this case, it must be remembered that the issue facing this Court was whether due process was afforded to a person who had an administrative hearing before the Judge of Industrial Claims with an appeal to the Industrial Relations Commission. The *35 Court concluded only that decisions of the Industrial Relations Commission are of such judicial nature as to satisfy the constitutional due process provision. 307 So.2d at 170. It is noteworthy that the constitutional question at issue, whether the due process clause was satisfied, was determined by this Court rather than by the administrative body.
Likewise, the availability of judicial appellate review of the hearing officer's rulings does not save the Act from constitutional infirmity. Judicial participation will be limited to appellate review of the final administrative decision, an evaluation which necessarily is circumscribed by the record on appeal and standards of review provided by the Administrative Procedure Act. Section 120.68(10), Florida Statutes (1987), provides the applicable standard of review:
[T]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by competent substantial evidence in the record.
The court may not reweigh the evidence, but is limited to a determination of whether there is sufficient evidence to support the hearing officer's determination of just compensation. The legislature may not so limit the ability of the judiciary to exercise its constitutionally conferred judicial power. Additionally, the fact that the district court would exercise judicial power under this procedure does not mean that the Division of Administrative Hearings is not also exercising judicial power in determining just compensation in violation of the doctrine of separation of powers.
With all due deference and respect to the majority, its opinion makes a mockery of the separation of powers provision of our state constitution and effectively eviscerates the proscription of article V against the creation of any courts except those provided in the constitution. While it may well be fiscally desirable to the petitioners to have an administrative hearing officer decide what is just compensation for property taken by the state for a public use, I cannot in good conscience accept and agree with the majority's reasoning and analysis to achieve that end. For the reasons stated above, I would find that the circuit court properly exercised its jurisdiction over these cases and would deny the petition for writ of prohibition.
BARKETT and KOGAN, JJ., concur.
NOTES
[1] Plaintiff Balm Citrus Nusery is a greenhouse nursery.
[2] It must be remembered that this Court has already determined that a "taking" has occurred and has defined the eligible claimants under chapter 89-91. The hearing officer will only discharge the limited role of finding the value of the destroyed plants.
[3] The circumstances which permit the judicial review to occur exclusively in the First District Court of Appeal in workers' compensation cases are equally compelling in canker claim cases. Rollins v. Southern Bell Tel. & Tel. Co., 384 So.2d 650 (Fla. 1980).
[4] Chapter 89-91 also guarantees payment for undiseased plants even though they were located in an infested nursery. We recently upheld the right to compensation for such plants in Polk. However, at the time the statute was enacted, this Court had only addressed the right to compensation for the destruction of plants in uninfested nurseries. Department of Agriculture & Consumer Servs. v. Mid-Florida Growers, Inc., 521 So.2d 101 (Fla.), cert. denied, 488 U.S. 870, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988).
[5] The rebuttable presumption with respect to the amount of attorneys' fees to be awarded for prosecuting claims before the hearing officer shall be treated in the same manner.
[6] Accordingly, the majority's reliance upon United States v. Jones, 109 U.S. 513, 3 S.Ct. 346, 27 L.Ed. 1015 (1883), and Nichols' The Law of Eminent Domain, op. at 29, 30, is to no avail. It is irrelevant in this context that the procedure set forth in chapter 89-91, Laws of Florida, would be constitutional under federal constitutional law or the law of another state.
[7] Article X, section 6(a), of the Florida Constitution states:

No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner.
The fifth amendment to the United States Constitution provides that "private property [shall not] be taken for public use, without just compensation."